IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–02023–EWN–CBS

HIGHLINE CAPITAL CORP., a Delaware corporation,

     Plaintiff,

v.

ROBEN D. AHDOOT, d/b/a INGLEWOOD OPEN MRI,

     Defendant/Third-Party Plaintiff,

v.

MOOSA HEIKALI, and
UNITED LEASING & DISTRIBUTIONS, INC.,

     Third-Party Defendants.

and

Civil Action No. 06–cv–02024–EWN–BNB

HIGHLINE CAPITAL CORP., a Delaware corporation,

     Plaintiff,

v.

SEPEHR KATIRAIE, M.D., INC., d/b/a LYNWOOD MEDICAL
IMAGING, a California corporation,
SEPEHR KATIRAIE, and MOOSA HEIKALI

     Defendants/Third-Party Plaintiffs,

v.

UNITED LEASING & DISTRIBUTIONS, INC.,

Third-Party Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is consolidated contracts case. Plaintiff Highline Capital Corp. alleges breach of lease/purchase agreements between itself and: (1) Defendant/Third-Party Plaintiff Roben D. Ahdoot; and (2) Defendant/Third-Party Plaintiff Sepehr Katiraie, M.D., Inc. (hereinafter "SKMD, Inc."). Plaintiff also alleges breach of guaranty against Defendant/Third-Party Plaintiff Sepehr Katiraie, and Defendant/Third-Party Defendant Moosa Heikali. Mr. Ahdoot, SKMD, Inc., and Mr. Katiraie, in turn, allege Third-Party Defendant United Leasing and Distributions, Inc. (hereinafter "United Leasing"), and Mr. Heikali fraudulently induced them into their respective lease/purchase agreements with Plaintiff, and therefore must indemnify them for any adverse judgments arising from the same. This matter is before the court on "United Leasing and Distributions, Inc.'s Motion to Dismiss Third Party Complaint of Roben D. Ahdoot D/B/A Inglewood Open MRI, or in the Alternative, Transfer of Venue [sic]," and "United Leasing and Distribution, Inc.'s Motion to Dismiss Third Party Complaint of Sepehr Katiraie, M.D., Inc., D/B/A Lynwood Medical Imaging and Sepehr Katiraie, or in the Alternative, Transfer of Venue [sic]," both filed on April 24, 2007. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1).

### FACTUAL BACKGROUND

This dispute arises from two separate lease/purchase transactions — one between Plaintiff and Mr. Ahdoot, and one between Plaintiff and SKMD, Inc. (*See* Compl. [filed Oct. 10, 2006]

[hereinafter "Highline v. Ahdoot Compl."]; Case No. 06–cv–02024–EWN–CBS, Compl. [filed Oct. 10, 2006] [hereinafter "Highline v. Katiraie Compl."].) Given the convoluted procedural posture of this case, and the relationship between this posture and the underlying substantive claims, I first recount the procedural background of these two cases separately, and then present the factual background of the third-party claims that are at issue in this order.

1.    *Underlying Dispute and Procedural Background*

    a.    *The Ahdoot Action*

    On October 10, 2006, Plaintiff filed a complaint in this court against Mr. Ahdoot alleging breach of contract based on the latter's alleged failure to make payments on a lease/purchase agreement for medical equipment including an X-ray machine. (*See* Highline v. Ahdoot Compl.) On January 10, 2007, Mr. Ahdoot answered Plaintiff's complaint, asserting a counterclaim for breach of contract, as well as third-party claims against Mr. Heikali for breach of contract, fraud, and indemnification. (*See* Answer to Compl., Countercl. and Third-Party Compl. [filed Jan. 10, 2007] [hereinafter "Ahdoot Answer/Third-Party Compl."].) In this same answer, Mr. Ahdoot also asserted third-party claims against United Leasing which are the subject of this order and discussed in greater detail below. (*See id.*)

    On February 6, 2007, I granted Mr. Ahdoot's motion to consolidate his action with the Katiraie action which was then before Judge Matsch. (*See* Order Consolidating Cases [filed Feb. 6, 2007].) On June 20, 2007, I granted Plaintiff and Mr. Ahdoot's stipulated motion to dismiss the latter's counterclaim against Plaintiff with prejudice. (*See* Order Dismissing Roben D. Ahdoot's Countercl. Against Pl. with Prejudice [filed June 20, 2007].) On November 16, 2007, I

granted the same parties' stipulated motion to dismiss Plaintiff's breach of contract claim against Mr. Ahdoot without prejudice.  (*See* Order Dismissing Pl.'s Claims Against Roben D. Ahdoot Without Prejudice [filed Nov. 16, 2007].)  As a result of these proceedings, the only outstanding claims arising from the Ahdoot action are Mr. Ahdoot's claims against United Leasing and Mr. Heikali.

        **b.**     ***The Katiraie Action***

        On October 10, 2006, Plaintiff filed a separate complaint before Judge Matsch against SKMD, Inc., and Mr. Katiraie (the "Katiraie Defendants") and Mr. Heikali.  (Highline v. Katiraie Compl.)  Plaintiff alleged breach of contract against SKMD, Inc., based on the latter's failure to make payments on a lease/purchase agreement for medical equipment including a CT scanner. (*See id.* ¶¶ 8–15.)  Plaintiff also alleged breach of guaranty against Mr. Katiraie and Mr. Heikali for their alleged failure to perform SKMD, Inc.'s obligations under the lease/purchase agreement according to the terms of a personal guaranty.  (*See id.* ¶¶ 16–20.)

        On December 15, 2006, the Katiraie Defendants answered Plaintiff's complaint, asserting cross-claims against Mr. Heikali for fraud, breach of contract, and indemnification.  (*See* Case No. 06–cv–02024–EWN–CBS, Answer to Compl. and Cross-Cl. [filed Dec. 15, 2006].)  On January 11, 2007, the Katiraie Defendants also filed a third-party complaint against United Leasing, which is the subject of this order and discussed in greater detail below.  (*See* Case No. 06–cv–02024–EWN–CBS Third-Party Compl. [filed Jan. 11, 2007] [hereinafter "Katiraie Third-Party Compl."].)  On March 7, 2007, I granted Plaintiff's motion for default judgment against Mr.

Heikali for his failure to answer Plaintiff's complaint.  (*See* J. by Default Against Moosa Heikali [filed March 7, 2007].)

As a result of these proceedings, the only outstanding claims arising from the Katiraie action are: (1) Plaintiff's claims against the Katiraie Defendants;(2) the Katiraie Defendants' cross-claims against Mr. Heikali; and (3) the Katiraie Defendants' third-party claims against United Leasing.[1]

### 2.    *Mr. Ahdoot and the Katiraie Defendants' Claims Against United Leasing*

The instant matter comes before the court on United Leasing's separate motions to dismiss Mr. Ahdoot and the Katiraie Defendants' claims against it.  I recount the factual bases of these claims as they pertain to each separately filed action.

#### a.    *Mr. Ahdoot's Claims Against United Leasing*

Mr. Ahdoot alleges fraudulent inducement and contribution against United Leasing relating to the latter's role in brokering a lease/purchase agreement between himself and Plaintiff. (*See* Ahdoot Answer/Third-Party Compl. at 7–8, 9.)  Although Mr. Ahdoot's complaint is sparse on detail and maddeningly difficult to decipher, the following represents this court's best interpretation of Mr. Ahdoot's claims against United Leasing.

Mr. Ahdoot is a resident of Los Angeles, California, and is likely a medical doctor. (*See* Ahdoot Answer/Third-Party Compl. at 3.)  Sometime in early 2005, Mr. Ahdoot was in an

---

[1]Plaintiff's claims against the Katiraie Defendants are the subject of an outstanding motion for summary judgment that I will address in a separate order.  (*See* Pl.'s Mot. for Summ. J. Against Sepehr Katiraie, M.D., Inc., and Sepehr Katiraie [filed June 11, 2007].)

indeterminate business relationship with Mr. Heikali, who is also likely a medical doctor, and also

a resident of Los Angeles, California. (*See id*. at 5, 7.) As part of this relationship, Mr. Heikali

persuaded Mr. Ahdoot that both men should lease or purchase certain medical equipment

including X-ray and ultrasound machines, which at that time — and presumably unbeknownst to

Mr. Ahdoot — may already have been in Mr. Heikali's possession or control. (*See id*. at 7–8.)

Mr. Heikali introduced Mr. Ahdoot to United Leasing, a California corporation with its

principle place of business in Fountain Valley, California. (*Id*. at 5, 7.) United Leasing is in the

business of buying medical equipment and selling it to financing companies which, in turn, lease or

sell such equipment to lessees/purchasers such as Mr. Ahdoot on installment plans. At the

meeting, United Leasing represented itself to Mr. Ahdoot as a broker, purchaser, and reseller of

medical equipment, and may also — intentionally or otherwise — have given Mr. Ahdoot the

impression that it leased/sold medical equipment to clients directly, and provided financing for

such lease/sales. (*See id.* at 8.) At this meeting, both United Leasing and Mr. Heikali also —

perhaps collusively — represented to Mr. Ahdoot that the value of the equipment that Mr.

Ahdoot and Mr. Heikali wished to acquire was in excess of $230,000. (*Id*. at 7.)

In June 2005, in reliance upon these representations, Mr. Ahdoot decided to

lease/purchase the medical equipment that he, Mr. Heikali, and United Leasing had discussed, and

entered into a "Master Lease Agreement" between himself and Plaintiff, a Delaware corporation

with its principle place of business in Boulder, Colorado. (*Id*. at 3, 6–7.) Plaintiff is apparently in

the business of purchasing equipment from companies such as United Leasing and leasing/selling

them to clients on installment plans. At the time Mr. Ahdoot signed this lease/purchase

agreement with Plaintiff, however, he may have believed he was leasing/purchasing the equipment directly from United Leasing, as Plaintiff — based in Boulder, Colorado — had forwarded the lease/purchase agreement to United Leasing for signing by Mr. Ahdoot. (*See* Defs.' Combined Resp. to United Leasing and Distribution, Inc.'s Mot. to Dismiss to [sic] Third-Party Complaints at 2–7 [filed May 8, 2007] [hereinafter "Ahdoot/Katiraie Defs.' Resp."].)

Sometime after entering into this agreement, Mr. Ahdoot learned to his surprise that both United Leasing and Mr. Heikali had received funds in relation to what he had assumed was a pure lease/purchase transaction between himself and United Leasing — the former presumably from its sale of the medical equipment to Plaintiff, and the latter presumably from his sale of the medical equipment to United Leasing. (*See* Ahdoot Answer/Third-Party Compl. at 8.) Mr. Ahdoot also learned that the actual value of the medical equipment was far lower than the value that had been represented to him by United Leasing and Mr. Heikali, and that this equipment had already been in Mr. Heikali's possession. (*Id*. at 8.) Accordingly, Mr. Ahdoot alleges that United Leasing either misrepresented the value of the medical equipment or misrepresented its role in brokering this transaction.

### b.    *The Katiraie Defendants' Claims Against United Leasing*

The Katiraie Defendants allege fraudulent inducement, indemnification, and contribution against United Leasing for its role in brokering a very similar transaction. (*See* Katiraie Third-Party Compl.) Although the Katiraie Defendants' complaint is equally unclear, the following represents this court's best interpretation of their claims.

Sometime in early 2005, Mr. Katiraie — who appears to be the sole owner of SKMD, Inc. — was introduced to United Leasing by Mr. Heikali. (*Id.* ¶ 9.) United Leasing represented itself as a broker engaged in loaning money for the acquisition of medical equipment. (*Id.* ¶ 10.) Both United Leasing and Mr. Heikali represented to Mr. Katiraie that the value of certain medical equipment, including a CT scanner, that could be leased or sold to SKMD, Inc., was approximately $350,000. (*Id.* ¶ 11.)

In April 2005, in reliance upon these representations, SKMD, Inc., entered into a lease/purchase agreement with Plaintiff, perhaps without realizing that Plaintiff was a separate entity from United Leasing. (*Id.* ¶ 1; *see also* Ahdoot/Katiraie Defs.' Resp. at 2–8.) Mr. Katiraie and Mr. Heikali separately guaranteed SKMD, Inc.'s obligations to Plaintiff under this lease/purchase agreement.

Sometime after entering into the agreement, Mr. Katiraie learned to his surprise that both United Leasing and Mr. Heikali had received funds in relation to this transaction — the former presumably from its sale of the medical equipment to Plaintiff, and the latter presumably from his sale of the equipment to United Leasing. (Katiraie Third-Party Compl. ¶ 14.) Mr. Katiraie also learned that the actual value of the medical equipment was far lower than the value that had been represented to him by United Leasing and Mr. Heikali. (*Id.* ¶ 15.) Mr. Heikali later "confessed . . . these fraudulent representations" to Mr. Katiraie, including United Leasing's role in these representations. (*Id.* ¶ 18.) Accordingly, the Katiraie Defendants allege that United Leasing either misrepresented the value of the medical equipment or misrepresented its role in brokering this transaction.

### 3. *Procedural History*

On April 24, 2007, United Leasing filed separate motions to dismiss Mr. Ahdoot and the Katiraie Defendants' complaints against it on the grounds that: (1) this court lacks personal jurisdiction over it; (2) venue is improper; and (3) Mr. Ahdoot and the Katiraie Defendants fail to state claims for fraud, indemnification, or contribution. (*See* United Leasing and Distributions, Inc.'s Mot. to Dismiss Third Party Compl. of Roben D. Ahdoot D/B/A Inglewood Open MRI, or in the Alternative, Transfer of Venue [sic] [filed Apr. 24, 2007] [hereinafter "United Leasing's Ahdoot Br."]; United Leasing and Distribution, Inc.'s Mot. to Dismiss Third Party Compl. of Sepehr Katiraie, M.D., Inc., D/B/A Lynwood Medical Imaging and Sepehr Katiraie, or in the Alternative, Transfer of Venue [sic] [filed April. 24, 2007] [hereinafter "United Leasing's Katiraie Br."].) On May 18, 2007, Mr. Ahdoot and the Katiraie Defendants filed a consolidated response to United Leasing's two motions. (*See* Ahdoot/Katiraie Defs.' Resp.) On June 4, 2007, United Leasing filed a consolidated reply. (*See* United Leasing and Distribution, Inc.'s Joint Resp. in Supp. of its Mot. to Dismiss Third Party Compls. of Third Party Compls. [sic] of Roben D. Ahdoot D/B/A Inglewood Open MRI and Sepehr Katiraie, M.D., D/B/A Lynwood Medical Imaging and Sepehr Katiraie, or in the Alternative, Transfer of Venue [sic] [filed June 4, 2007] [hereinafter "United Leasing's Reply"].) On June 19, 2007, I granted Mr. Ahdoot and the Katiraie Defendants' motion for leave to file a sur-reply. (*See* Minute Order [filed June 19, 2007].) This matter is fully briefed and ripe for review.

# ANALYSIS

## 1.    *Standard of Review*

United Leasing moves to dismiss Mr. Ahdoot and the Katiraie Defendants' complaints against it for: (1) lack of personal jurisdiction; (2) improper venue; and (3) failure to state claims for fraud, indemnification, or contribution.  (*See* United Leasing's Ahdoot Br.; United Leasing's Katiraie Br.)  Because I need only reach United Leasing's personal jurisdiction argument, I only relate the standard of review relating to personal jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2) (2008).  A plaintiff bears the burden of establishing personal jurisdiction over a defendant.  *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  In the preliminary stages of litigation, the plaintiff's burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing that jurisdiction exists.  *Id*.

The plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."  *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).  The allegations in the plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by [the defendant's] affidavits.'"  *Wenz*, 55 F.3d at 1505 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d

143, 145 [10th Cir. 1992]).  If the parties present conflicting affidavits, all factual disputes must

be resolved in the plaintiff's favor, and the "plaintiff's *prima facie* showing is sufficient

notwithstanding the contrary presentation by the moving party."  *Id.* (citation omitted).  Only

well-pled facts, as opposed to mere conclusory allegations, must be accepted as true.  *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident

defendant in a diversity action, the court looks to the law of the forum state.  *Taylor v. Phelan*,

912 F.2d 429, 431 (10th Cir. 1990).  In Colorado, the assertion of personal jurisdiction must

both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process.  *Id.*;

*Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales,*

*Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992).  Colorado's long-arm statute subjects a

defendant to personal jurisdiction for engaging in the "commission of a tortious act within this

state" or the "transaction of any business within this state."  Colo. Rev. Stat. §§

13–1–124(1)(a)–(b) (2007).

To comport with due process, a defendant must have minimum contacts with the forum

state such that maintenance of the lawsuit would not offend "traditional notions of fair play and

substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Colorado's long-

arm statute is a codification of the "minimum contacts" principle required by due process.  *See*

*Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966).  Thus, under Colorado law, a

court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the

Fourteenth Amendment.  *See OMI Holdings*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249

(Colo. 1984).  Because the long-arm statute imposes no greater limitation than federal due process, I proceed directly to the constitutional analysis.  *Id.*

**2.      Evaluation of Claims**

     **a.      Personal Jurisdiction Principles**

     To determine whether personal jurisdiction is proper under the Constitution, a court first looks to find minimum contacts with the forum state.  *See Int'l Shoe Co.*, 326 U.S. at 316.  If minimum contacts are established, the court then determines whether exercise of personal jurisdiction would be reasonable.  *Id.*  The standard of reasonableness is measured by whether exercise of jurisdiction would offend "traditional notions of fair play and substantial justice."  *Id.*

     Whether a nonresident has the requisite minimum contacts to establish personal jurisdiction frequently involves an *ad hoc* analysis of the facts.  *Waterval v. Dist. Ct.*, 620 P.2d 5, 9 (Colo. 1980).  Although "[c]ase authority is helpful to set the boundaries for the 'minimum contacts' concept," a court "must still weigh the various factors involved in a specific set of circumstances."  *Combs Airways* v. *Trans-Air Supply Co.*, 560 F. Supp. 865, 867 (D. Colo. 1983); *see also Shanks v. Westland Equip. & Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982) (stating that a court must evaluate the facts of each case in resolving personal jurisdiction issues).

     Satisfaction of the minimum contacts and reasonableness standards may result in either general or specific jurisdiction by the court.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996); *Nat'l Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1231, 1235 (D. Colo. 2000).  General jurisdiction "arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those

contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Specific jurisdiction is predicated on a "defendant's minimum contacts with the forum which give

rise to the cause of action." *Kennedy v. Freeman*, 919 F.2d 126, 128 n.2 (10th Cir. 1990).

In the instant case, United Leasing asserts it is not subject to this court's jurisdiction

because: (1) it does not have the requisite "continuous and systematic" contacts with Colorado to

provide general jurisdiction; (2) it did not avail itself of the privileges of conducting business in

Colorado as is required to confer specific jurisdiction; (3) Mr. Ahdoot and the Katiraie

Defendants' claims against it do not arise from its contacts with Colorado as is also required to

confer specific jurisdiction; and (4) personal jurisdiction is unreasonable in light of the

circumstances. (United Leasing's Ahdoot Br. at 4–14; United Leasing's Katiraie Br. at 4–14.)

Mr. Ahdoot and the Katiraie Defendants contend that this court may assert either general or

specific jurisdiction over United Leasing based on its business contacts with Colorado. (*See*

Ahdoot/Katiraie Defs.' Resp. at 8–15.) I first address the alleged sufficiency of United Leasing's

business contacts with Colorado to provide either general or specific jurisdiction, and then analyze

whether exercise of such jurisdiction would be reasonable.

### b.    *General Jurisdiction*

A court may exercise general jurisdiction when the defendant's business contacts with the

forum state are "continuous and systematic," but do not rise to the level of traditional notions of

presence in the forum state. *Helicopteros*, 466 U.S. at 414–16. The defendant's "activities

within the jurisdiction must render it foreseeable that the party should reasonably anticipate being

haled in to the forum court." *In re Application to Enforce v. Knowles*, 87 F.3d 413, 417 (10th

Cir. 1996) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 [1980]).

"There is no bright line rule to determine what constitutes systematic and continuous contacts," but courts have considered, *inter alia*, "the frequency of defendant's travel to the forum state, frequency and amount of work a defendant performed in the forum state, and whether a defendant owned property in the forum state." *Int'l Beauty Prods., LLC v. Beveridge*, 402 F. Supp. 2d 1261, 1272 (D. Colo. 2005) (citations omitted). "'Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test . . . .'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (quoting *OMI Holdings*, 149 F.3d at 1091); *see also Schneider v. Cate*, 405 F. Supp. 2d 1254, 1260 (D. Colo. 2005) (citing *Trierweiler*, 90 F.3d at 1543) ("The threshold of contacts necessary to support general jurisdiction is high.").

In the instant case, Mr. Ahdoot and the Katiraie Defendants do not deny that United Leasing: (1) is a California corporation with its principal place of business in California; (2) has never maintained any offices in Colorado; (3) has never maintained employees or agents — permanently or temporarily — in Colorado; (4) has never had a telephone listing, business address, or bank account Colorado; and (5) has never owned any real or personal property located in Colorado. (*See* United Leasing's Ahdoot Br. at 6; United Leasing's Katiraie Br. at 6; Decl. of Phillip F. Mohseni in Supp. of United Leasing and Distribution, Inc.'s Mot. to Dismiss Third Party Compl. of Roben D. Ahdoot D/B/A Inglewood Open MRI, or the Alternative, Transfer of Venue [sic] ¶¶ 3–6 [filed Apr. 24, 2007] [hereinafter "Mohseni Decl."];

Ahdoot/Katiraie Defs.' Resp. at 9–11.)[2] Mr. Ahdoot and the Katiraie Defendants nonetheless identify two general types of business contacts that they claim are sufficient to demonstrate a *prima facie* case of general jurisdiction, namely: (1) sixty transactions between United Leasing and Plaintiff; and (2) United Leasing's role as a purported agent of Plaintiff. (*See* Ahdoot/Katiraie Defs.' Resp. at 9–11.) I assess each of these alleged types of business contacts in turn to determine whether individually or in combination they are sufficient to demonstrate a *prima facie* case of general jurisdiction. *Wenz*, 55 F.3d at 1505.

### i. *Sixty Transactions Between United Leasing and Plaintiff*

Mr. Ahdoot and the Katiraie Defendants first assert that, in sixty transactions between United Leasing and Plaintiff over the course of approximately three years, United Leasing not only sold equipment to Plaintiff, but facilitated the formation of lease/purchase agreements between Plaintiff and the lessees/purchasers of this equipment. (*See* Ahdoot/Katiraie Defs.' Resp. at 9–10.) Specifically, Mr. Ahdoot and the Katiraie Defendants assert that, in each of sixty transactions, United Leasing: (1) received "Master Lease Agreements" from Plaintiff; (2) had lessees/purchasers complete these agreements and remitted them to Plaintiff in Colorado; and (3) sometimes remitted the lessees/purchasers' first and last months' payments along with the remitted lease/purchase agreements to Plaintiff. (*See id.*) Mr. Ahdoot and the Katiraie Defendants further allege that: (1) Plaintiff and United Leasing exchanged telephone calls, emails, and facsimiles in relation to these transmissions; (2) United Leasing received payments in relation

---

[2]As is common in other jurisdictions, but not this one, United Leasing docketed exhibits in support of its motions separately from the motions themselves.

to these transmissions; and (3) United Leasing was aware of a clause in the lease/purchase agreements stating these agreements were "entered into and would be governed by the laws of the state of Colorado."[3]  (*See id.*)

United Leasing does not directly refute this characterization of its business practice, but points out that: (1) all but one of the sixty transactions involved equipment and lessees/purchasers who were located in California; (2) all of its interactions with the lessees/purchasers with respect to these transactions occurred in California; and (3) all of its communications with Plaintiff with respect to these transactions occurred while United Leasing was in California.  (*See* United Leasing's Reply at 3–4; Supp. Decl. of Phillip F. Mohseni in Supp. of United Leasing and Distribution, Inc.'s Joint Resp. In Supp. of Its Mot. to Dismiss Third Party Compls. of Roben D. Ahdoot D/B/A Inglewood Open MRI and Sepehr Katiraie, M.D., Inc., D/B/A Lynwood Medical Imaging and Sepehr Katiraie, or in the Alternative, Transfer of Venue [sic] ¶ 6 [filed June 4, 2007] [hereinafter "Mohseni Supp. Decl."].)

On balance, I find the sixty business transactions over the course of approximately three years between United Leasing and Plaintiff in Colorado do not rise to the level of "continuous and systematic" business conduct required to confer general jurisdiction.  *See, e.g.*, *Helicopteros*, 466

---

[3]Despite mentioning this forum selection cause, and surmising that United Leasing was aware of it, Mr. Ahdoot and the Katiraie Defendants do not suggest how this clause purportedly applies to United Leasing, or constitutes any sort of "contact" with Colorado.  (*See* Ahdoot/Katiraie Defs.' Resp. at 9.)  United Leasing, by contrast, persuasively argues against both propositions.  (*See* United Leasing's Reply at 6–7.)  Accordingly, I find that Mr. Ahdoot and the Katiraie Defendants have not meet their burden of showing how this evidence helps their case for general jurisdiction.  *See Far W. Capital, Inc.*, 46 F.3d at 1075 (a plaintiff bears the burden of establishing personal jurisdiction over a defendant).

U.S. at 411, 415–17 (finding no general jurisdiction over foreign corporation that: [1] negotiated a contract in Texas; [2] purchased over eighty-percent of its fleet from a Texas company over the course of seven years; [3] sent pilots and management for training in Texas over the course of seven years; and [4] received over $5 million in payments from a Texas company drawn on Texas bank accounts].)  Unlike in *Helicopteros* — in which general jurisdiction still was not found — only one of the sixty transactions between United Leasing and Plaintiff allegedly involved equipment or lessees/purchasers who were located in Colorado.  *See id.*, 466 U.S. at 411, 415–17.  All fifty-nine other transactions, by contrast, involved merely the exchange of documents and money between Colorado and California reflecting the transfer of ownership of medical equipment located in California from United Leasing to Plaintiff.  (*See* Mohseni Supp. Decl. ¶ 6.) Moreover, also unlike in *Helicopteros*, United Leasing had no ancillary physical connections with Colorado such as presence in the state for training purposes, thus making Mr. Ahdoot and the Katiraie Defendants' case for general jurisdiction even weaker.  *See Helicopteros*, 466 U.S. at 411, 415–17.  Finally, the Supreme Court in *Helicopteros* held that "mere purchases, even if occurring at regular intervals, are not enough to warrant" general jurisdiction, and this court sees no reason why mere sales, even if attended by the transmission of "Master Lease Agreements" and related communications, should be any different.  *Id*. at 418; *see also Trierweiler*, 90 F.3d at 1533 (finding no general jurisdiction in Michigan where Colorado law firm represented twenty-four Michigan residents in 104 matters but had no office or agents in Michigan, did not solicit business in Michigan, and "[none] of this business was conducted in Michigan").  Accordingly, I find that this court does not have general jurisdiction over United Leasing.

Moreover, I note that the one lease/purchase transaction that allegedly *did* involve a Colorado lessee/purchaser does not affect my above holding because: (1) Mr. Ahdoot and the Katiraie Defendants have provided no evidence about this transaction beyond the mere suggestion that it occurred; (2) United Leasing affied that it "did not solicit that lessee's business" in this transaction; and (3) this single transaction would be insufficient to provide even *specific* jurisdiction in an action arising out of that transaction. (Mohseni Supp. Decl. ¶ 6); *see SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202 (D. Colo. 2002) ("[T]he law is clear that party does not submit itself to [specific] personal jurisdiction in a distant forum simply by entering into a contract with a party that resides in that forum."). Accordingly, I find the one lease transaction that allegedly involved a Colorado lessee/purchaser does not confer general jurisdiction.

### ii.     United Leasing's Role as a Purported Agent of Plaintiff

Mr. Ahdoot and the Katiraie Defendants next argue that United Leasing's alleged facilitation of the lease/purchase agreements between Plaintiff and leasees/purchasers raises a question of fact as to whether United Leasing was an "agent of [Plaintiff] for the purpose of the lease transactions." (Ahdoot/Katiraie Defs.' Resp. at 10–11.) United Leasing vigorously disputes this characterization, pointing to, *inter alia*, a clause in the lease/purchase agreements reciting that lessees/purchasers agreed that "neither [United Leasing] nor any sales person, employee or agent of [United Leasing] is [Plaintiff's] agent." (United Leasing's Reply at 6 [quoting language from Plaintiff's "Master Lease Agreements" with Mr. Ahdoot and SKMD, Inc.].)

Despite this wrangling, I find the legal characterization of United Leasing's relationship with Plaintiff irrelevant to the question of general jurisdiction. Despite their burden, Mr. Ahdoot and the Katiraie Defendants cite no cases discussing the effect of an alleged agency relationship upon a minimum contacts analysis, and have not even suggested — with or without legal citation — how such a relationship could potentially affect such an analysis. (*See* Adhoot/Katiraie Defs.' Resp. at 10–11); *Far W. Capital, Inc.*, 46 F.3d at 1075 (a plaintiff bears the burden of establishing personal jurisdiction over a defendant). Without any guidance from Mr. Ahdoot or the Katiraie Defendants, I fail to see how, even assuming United Leasing were an "agent of [Plaintiff] for the purpose of the lease transactions," this fact alone would change the *character* of United Leasing's contacts with Colorado, which I have already found are insufficient to confer general jurisdiction. (Ahdoot/Katiraie Defs.' Resp. at 11.) Accordingly, I decline to consider this argument further.

### c. Specific Jurisdiction

To subject a nonresident to the specific jurisdiction of the forum state based on its business contacts, due process is only satisfied if the litigation results from alleged injuries that "arise out of or relate to" activities that are significant and purposefully directed by the defendant at residents of the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1116 (D. Colo. 1999). The defendant must have committed some act purposefully availing himself of the privilege of conducting activities within the forum state. *Id.* Contacts between the defendant and the forum state cannot be "random," "fortuitous," or "attenuated." *F.D.I.C. v. First Interstate Bank of Denver N.A.*, 937 F. Supp. 1461, 1468 (D. Colo. 1996).

United Leasing argues that: (1) under applicable law, it did not purposely avail itself of the privilege of conducting business within Colorado; and (2) Mr. Ahdoot and the Katiraie Defendants' claims do not "arise out of or relate to" its contacts with Colorado. (United Leasing's Ahdoot Br. at 6–11; United Leasing's Katiraie Br. at 6–10; United Leasing's Reply at 8–13.) Mr. Ahdoot and the Katiraie Defendants respond in conclusory fashion, claiming that: (1) all sixty of United Leasing's transactions with Plaintiff show purposeful availment; (2) United Leasing created "continuing obligations" within Colorado that subjects it to specific jurisdiction; and (3) United Leasing "arguably" committed a tort within Colorado. (Ahdoot/Katiraie Defs.' Resp. at 11–13.)

Despite Mr. Ahdoot and the Katiraie Defendants' mystifying invocation of all sixty transactions to demonstrate *specific* jurisdiction, and their citation to unavailing law pertaining thereto, I find that United Leasing's transactions with Plaintiff — either individually, or *en masse* — do not constitute purposeful availment of the privilege of conducting business in Colorado under applicable law.[4] *See, e.g.*, *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 16 F.

---

[4]Mr. Ahdoot and the Katiraie Defendants never explain why all sixty transactions are purportedly relevant to specific jurisdiction arising from the *two transactions* to which they claim their claims relate. (*See* Ahdoot/Katiraie Defs.' Resp. at 11–12.) Moreover, Mr. Ahdoot and the Katiraie Defendants cite *Archangel Diamond Corp. v. Lukoli*, 123 P.3d 1187 (Colo. 2005) as an example of courts considering "numerous communications from the defendant to the plaintiff (whose principle place of business was in Colorado) including letters, faxes, telephone calls and transfer of funds" in assessing specific jurisdiction. (*See* Ahdoot/Katiraie Defs' Resp. at 12.) While the Colorado Supreme Court did *consider* such evidence in *Archangel*, Mr. Ahdoot and the Katiraie Defendants neglect to mention that it held such evidence *insufficient* to confer specific jurisdiction. *See Archangel Diamond Corp.*,123 P.3d at 1195–1200. I admonish Mr. Ahdoot and the Katiraie Defendants for either sloppily reporting this case, or intentionally trying to mislead this court.

-20-

App'x 959, 962 (10th Cir. 2001) (finding no purposeful availment where defendant entered into listing agreements with Colorado company and exchanged numerous "telephone, facsimile, and e-mail communications" in relation thereto); *see also Automated Quill, Inc. v. Chernow*, 455 F. Supp. 428 (D. Colo. 1978) (finding no purposeful availment where defendants did not come into Colorado for either negotiations or execution of a licensing agreement). Moreover, I find that Mr. Ahdoot and the Katiraie Defendants' claims against United Leasing do not "arise out of or relate to" United Leasing's contacts with Plaintiff in Colorado. *Burger King Corp.*, 471 U.S. at 472. Mr. Ahdoot and the Katiraie Defendants allege that United Leasing misrepresented the value of medical equipment to them in California and/or misrepresented its role in brokering the underlying lease transactions between them and Plaintiff. (*See* Ahdoot Answer/Third-Party Compl. at 7–8; Katiraie Third-Party Compl. ¶¶ 6–18.) Such misrepresentations — assuming they occurred — clearly do not "arise out of" United Leasing's sale of medical equipment to Plaintiff, nor the transmission of "Master Lease Agreements" or related communications *between United Leasing and Plaintiff*, which constitute United Leasing's only alleged activities directed at residents of Colorado. *Burger King Corp.*, 471 U.S. at 472. Moreover, to the questionable extent that such misrepresentations "relate to" these sales or transmissions — in these sense that both have the same subject matter, namely, the medical equipment — I find such relation too "attenuated" to confer specific jurisdiction. *See First Interstate Bank of Denver N.A.*, 937 F. Supp. at 1468. Accordingly, I find this court does not have specific jurisdiction over United Leasing.

Finally, I find Mr. Ahdoot and the Katiraie Defendants' conclusory arguments that United Leasing created "continuing obligations" within Colorado that subject it to specific jurisdiction and "arguably" committed a tort within Colorado to be without factual or logical support. (*See* Ahdoot/Katiraie Defs.' Resp. at 11–13.) First, Mr. Ahdoot and the Katiraie Defendants cite no evidence suggesting that United Leasing had any sort of "continuing obligations" with Plaintiff arising from the two relevant sales transactions or attendant transmissions of "Master Lease Agreements," and their complaints contain no such allegations. (*See* Ahdoot/Katiraie Defs.' Resp.; Ahdoot Answer/Third-Party Compl.; Katiraie Third-Party Compl.) I accordingly decline to consider this disembodied argument further. Second, Mr. Ahdoot and the Katiraie Defendants fail to explain — or provide legal support for — their assertion that: "[United Leasing's] handling of the lease transaction on behalf of [Plaintiff] and the fraudulent misrepresentation of the circumstances behind the lease transaction, combined with the forum selection clause in the state of Colorado, can also arguably be considered a 'tort' within the state of Colorado." (Ahdoot/Katiraie Defs.' Resp. at 12.) As United Leasing sagely points out, any alleged misrepresentations by it must necessarily have occurred in California, been directed at California residents, and pertained to the value of medical equipment located in California. (*See* United Leasing's Reply at 12–13.) As such, this court fails to see how any misrepresentations — even if uttered in the physical presence of a forum selection clause that does not apply to United Leasing — suggest that a tort has "arguably" been committed in Colorado. I accordingly find Mr. Ahdoot and the Katiraie Defendants' conclusory arguments attempting to establish specific jurisdiction without merit.

### d.   *Reasonableness of Exercise of Jurisdiction*

In the alternative, even assuming requisite minimum contacts existed between United Leasing and Colorado, I find that exercise of personal jurisdiction over United Leasing would be unreasonable under the circumstances of this case.

Once minimum contacts have been established, a court must determine whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316; *Encore Prods.*, 53 F. Supp. 2d at 1118. In making this determination, a court may consider: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi*, 480 U.S. at 113; *OMI Holdings*, 149 F.3d at 1086. I assess each of these five factors in turn.

First, United Leasing proffers affidavit testimony that it has no offices, employee, agents, or personnel in Colorado, has only one employee, and cannot afford to defend an out-of-state lawsuit. (United Leasing's Ahdoot Br. at 11; United Leasing's Katiraie Br. at 11; Mohseni Decl. ¶¶ 3–5, 10.) Mr. Ahdoot and the Katiraie Defendants' only rejoinder is a *non sequitur* jibe directed at United Leasing,[5] and the claim — unsupported by evidentiary citation — that "other

---

[5]Mr. Ahdoot and the Katiraie Defendants churlishly sneer that "[United Leasing] apparently did not consider it a burden on [Mr. Ahdoot and the Katiraie Defendants] when presenting [the latter] with lease agreements containing forum selection clauses and choice of law provisions in the state of Colorado." (Ahdoot/Katiraie Defs.' Resp. at 13.) This court notes that

than the travel required for the trial of this action, there is no significant burden upon [United

Leasing]." (Ahdoot/Katiraie Defs.' Resp. at 13.) Because I find Mr. Ahdoot and the Katiraie

Defendants' response inadequate to dispute United Leasing's evidence, I accordingly find this

factor militates against the exercise of jurisdiction.

Second, as to Colorado's interest in resolving this dispute, United Leasing sensibly points

out that Colorado has little apparent interest in resolving a dispute between California residents

relating to the value of California equipment. (*See* United Leasing's Ahdoot Br. at 12; United

Leasing's Katiraie Br. at 12.) Mr. Ahdoot and the Katiraie Defendants cryptically respond that

"Colorado's interest in resolving this dispute arises from [Plaintiff's] lease agreements providing

for forum selection, choice of law [sic], and execution of the lease within the state."[6]

(Ahdoot/Katiraie Defs.' Resp. at 13.) The court fails to grasp how forum selection clauses

enforceable between Plaintiff and Mr. Ahdoot and SKMD, Inc. — which, incidentally, already

permit venue in the District of Colorado for the relevant claims between these parties —

somehow gives Colorado an independent interest in resolving the largely unrelated disputes

between United Leasing and Mr. Ahdoot and the Katiraie Defendants. Moreover, Mr. Ahdoot

---

had Mr. Ahdoot and the Katiraie Defendants found such forum selection and choice of law
provisions in their lease/purchase agreements *with Plaintiff* onerous, they could have declined to
sign them.

[6]Although unexplained, Mr. Ahdoot and the Katiraie Defendants' allusion to "execution of
the lease within the state" possibly refers to the ambiguous language of the forum selection clause
in the lease/purchase agreements which recites that such agreements were "entered into and
would be governed by the laws of the state of Colorado." (*See* Highline v. Ahdoot Compl., Ex. A
at 1 [Ahdoot Master Lease Agreement].)

and the Katiraie Defendants' unexplained assertion that — contrary to all proffered evidence and the allegations in their own complaints — the lease/purchase agreements were executed *within Colorado* similarly proves no interest on the part of Colorado in resolving disputes that are largely unrelated to the substance of these lease/purchase agreements. Accordingly, I find that this factor militates against the exercise of jurisdiction.

Third, as to Mr. Ahdoot and the Katiraie Defendants' interest in receiving convenient and effective relief, this factor focuses on whether their chances of recovery would be greatly diminished by forcing litigation in another forum due to that forum's laws, or because the burden would be so overwhelming as to practically foreclose pursuit of their lawsuits. *See OMI Holdings, Inc.*, 149 F.3d at 1097. Mr. Ahdoot and the Katiraie Defendants proffer no evidence suggesting that their chances of recovery in California would be diminished due that state's laws, or that their burden in litigating in California would practically foreclose pursuit of their lawsuit.[7] (*See* Ahdoot/Katiraie Defs.' Resp. at 14.) Accordingly, I find that this factor militates against jurisdiction.

Fourth, as to the interstate judicial system's interest in obtaining the most efficient resolution of controversies, this factor focuses on whether Colorado is the most efficient place to litigate this dispute, and depends on factors such as: (1) the location of witnesses; (2) where the wrong underlying the lawsuit occurred; and (3) whether jurisdiction is necessary to prevent

---

[7]Instead, Mr. Ahdoot and the Katiraie Defendants meekly protest that refiling their case in California would require "additional cost and inconvenience." (*See id*. at 14.) While this could very well be true, it hardly proves that their burden is so overwhelming as to practically foreclose pursuit of their lawsuit.

piecemeal litigation. *Encore Prods.*, 53 F. Supp. 2d at 1119; *OMI Holdings*, 149 F.3d at 1097.

While the wrong underlying this dispute almost certainly occurred in California, Mr. Ahdoot and

the Katiraie Defendants nonetheless claim — without elucidation — that "several of the witnesses

are located both in California and Colorado," and that dismissal of their claims would result in

piecemeal litigation. (*See* Ahdoot/Katiraie Defs.' Resp. at 14.) United Leasing does not

effectively parry these arguments. (*See* United Leasing's Reply at 16.) Nonetheless, even

assuming that some unspecified witnesses might be located in Colorado, and that dismissal would

require additional, separate litigation in California, I still find Colorado is not the most efficient

place to litigate this dispute. First, although some Colorado witnesses might be relevant to Mr.

Ahdoot and the Katiraie Defendants' claims, it clear that all *currently* foreseeable witnesses — to

wit, Mr. Ahdoot, Mr. Katiraie, Mr. Heikali, and United Leasing — are *California* residents.

Moreover, even though dismissal of Mr. Ahdoot and the Katiraie Defendants' claims may

necessitate new filings in California, the interstate judicial system's interest in efficiency is not

thereby damaged because Mr. Ahdoot and the Katiraie Defendants' claims in the instant court

must already be treated as essentially separate actions given their attenuated connection to

Plaintiff's own claims. Accordingly, I find this factor militates against jurisdiction.

Fifth, as to the shared interest of the several states in furthering fundamental substantive

social policies, this factor focuses on "whether the exercise of personal jurisdiction by [Colorado]

affects the substantive social policy interests of other states." *Encore Prods.*, 53 F. Supp. 2d at

1119. Neither party has presented competent evidence on this point, so I make no finding with

respect to it.  (*See* United Leasing's Ahdoot Br. at 13; United Leasing's Katiraie Br. at 13; Ahdoot/Katiraie Defs.' Resp. at 14–15.)

On balance, I find four of the five relevant factors militate against jurisdiction, and therefore find that the exercise of such jurisdiction — even assuming it were proper under the minimum contacts analysis — would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

**3.**    ***Conclusion***

Based on the foregoing it is therefore ORDERED that:

1.    United Leasing's motion to dismiss (#60) is GRANTED, without prejudice, for want of personal jurisdiction.

2.    United Leasing's motion to dismiss (#61) is GRANTED, without prejudice, for want of personal jurisdiction.

3.    The clerk shall forthwith enter judgment in favor of United Leasing and against Mr. Ahdoot and the Katiraie Defendants, dismissing the latter's claims against United Leasing without prejudice.  United Leasing may have its costs by filing a bill of costs within eleven days of the date on which this order is filed.

Dated this 20th day of February, 2008.

BY THE COURT:


<u>s/ Edward W. Nottingham</u>
EDWARD W. NOTTINGHAM
Chief United States District Judge